1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF ARIZONA**

8   David Bernard Clark,

9              Petitioner,

10  vs.

11  Paul O'Connell, et al.,

12             Respondents.

13

14

CV 13-0129-TUC-JAS (JR)

**REPORT AND RECOMMENDATION**

15       Pending before the Court is David Bernard Clark's Amended Petition for Writ

16  of Habeas Corpus (Doc. 8) filed pursuant to 28 U.S.C. § 2254.  In accordance with

17  the Rules of Practice of the United States District Court for the District of Arizona

18  and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report

19  and recommendation.  As explained below, the Magistrate Judge recommends that

20  the District Court, after an independent review of the record, dismiss the Petition

21  with prejudice.

22

1

## I.       FACTUAL AND PROCEDURAL BACKGROUND

In its Memorandum Decision affirming Clark's conviction and sentence, the

Arizona Court of Appeals summarized the factual background as follows:[1]

> Pursuant to a plea agreement, Clark was convicted of failing to register as a sex offender as required by A.R.S. § 13–3821. The trial court imposed an enhanced, "somewhat mitigated," 3.5–year term of imprisonment. Thereafter, Clark initiated proceedings pursuant to Rule 32, arguing in his petition that (1) Arizona's sex offender registration statute cannot be applied retroactively, (2) the registration requirement violates his right of protection against double jeopardy, (3) the registration requirement violates A.R.S. § 1–246, (4) his "sentence of imprisonment violates the Eighth Amendment's prohibition of cruel and unusual punishment," and (5) there was insufficient factual basis for his plea and a related "possible claim for ineffective assistance of counsel."

> The trial court summarily denied relief on Clark's petition, concluding that this court had "considered and rejected" his arguments related to the sex offender registration statute in *State v. Henry*, 224 Ariz. 164, 228 P.3d 900 (App. 2010), that Clark's sentence was not cruel and unusual punishment, and that "[t]he factual basis was more than sufficient to support [Clark]'s guilty plea."

*State v. Clark*, 2011 WL 1532368 (Ariz. App. Apr. 20, 2011); Ex. A (copy of

decision).[2]   The Arizona Court of Appeals affirmed the trial court's decision.   *Id.*

Clark then sought review of the decision by the Arizona Supreme Court, which

initially granted review, but after oral argument vacated review as improvidently

granted on May 8, 2012.  Exs. B, C.

_____

[1] The factual summary of the Arizona Court of Appeals is accorded a presumption of correctness. 28 U.S.C. § 2254(e)(1); *Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir. 2009) (citing *Hernandez v. Small*, 282 F.3d 1132, 1135 n. 1 (9th Cir. 2002)).

[2] Unless otherwise indicated, all exhibit references are to the exhibits attached to the Respondents' Answer to Amended Petition for Writ of Habeas Corpus (Doc. 13).

2

1    Petitioner commenced this action with the filing of his original petition on

2   March 5, 2013 (Doc. 1).  He subsequently filed the now pending amended petition on

3   May 16, 2013.  (Doc. 8).  Clark raises one claim in the amended petition.  He claims

4   that his conviction for failing to register as a sex offender, his sentence and the

5   continuing requirement that he register as a sex offender violate the Ex Post Facto

6   Clause of the United States Constitution.  *Amended Petition*, pp. 5-6.  Clark raised

7   this claim in his Rule 32 petition for post-conviction relief.  *Id.*, Ex. 2, pp. 4-5.  He

8   also raised the claims in his petitions for review to both the the Arizona Court of

9   Appeals and the Arizona Supreme Court.  *Id.*, Exs. 5, 6.

10  **II.    TIMELINESS**

11    The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

12  provides for a one year statute of limitations to file a petition for writ of habeas

13  corpus.   28 U.S.C. § 2244(d)(1).   Petitions filed beyond the one-year limitations

14  period must be dismissed.  *Id.* The statute provides in pertinent part that:

15    (1) A 1–year period of limitation shall apply to an application for a writ
      of habeas corpus by a person in custody pursuant to the judgment of a
16    State court. The limitation period shall run from the latest of-

17    (A) the date on which the judgment became final by the conclusion of
      direct review or the expiration of the time for seeking such review;
18
19    (B) the date on which the impediment to filing an application created
      by State action in violation of the Constitution or laws of the United
20    States is removed, if the applicant was prevented from filing by such
      State action;

21    (C) the date on which the constitutional right asserted was initially
      recognized by the Supreme Court, if the right has been newly
22

3

1   recognized by the Supreme Court and made retroactively applicable to
2   cases on collateral review; or

3   (D) the date on which the factual predicate of the claim or claims
    presented could have been discovered through the exercise of due
4   diligence.

5   (2) The time during which a properly filed application for State post-
    conviction or other collateral review with respect to the pertinent
6   judgment or claim is pending shall not be counted toward any period of
    limitation under this subsection.

7   28 U.S.C. § 2244(d).

8        As noted above, the one-year AEDPA limitations period is tolled for the "time

9   during which a properly filed application for State post-conviction or other collateral

10  review with respect to the pertinent judgment or claim is pending."  *See* 28 U.S.C. §

11  2244(d)(2).  Here, Clark's properly filed PCR petition remained pending until May 8,

12  2012, when the Arizona Supreme Court vacated review as improvidently granted.

13  Ex. C.  *See Lawrence v. Florida*¸ 549 U.S. 327, 332 (2007).  Pursuant to 28 U.S.C. §

14  2244(d)(1), Clark then had one year to file his federal habeas corpus petition.  By

15  filing the original petition on March 5, 2013, Clark satisfied the deadline and his

16  petition is timely.

17  **III.    MERITS**

18       **A.    AEDPA Standards**

19       Under the AEDPA, a federal court "shall not" grant habeas relief with respect

20  to "any claim that was adjudicated on the merits in State court proceedings" unless

21  the state decision was (1) contrary to, or an unreasonable application of, clearly

22  established federal law as determined by the United States Supreme Court; or (2)

4

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  *See Williams v. Taylor*, 120 S.Ct. 1495 (2000).  A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result.  *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000).  In determining whether a state court decision is contrary to federal law, the court must examine the last reasoned decision of a state court and the basis of the state court's judgment.  *Packer v. Hill*, 277 F.3d 1092, 1101 (9th Cir. 2002).  A state court's decision can be an unreasonable application of federal law either (1) if it correctly identifies the governing legal principle but applies it to a new set of facts in a way that is objectively unreasonable, or (2) if it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

### B.     Ex Post Facto Clause

As Clark explains it in his Memorandum in Support of Amended Petition (Doc. 8-1), in 1982, when he was 18-years-old, he pled guilty to sexual misconduct, a class 2 felony, arising from an incident of consensual sex with a minor under 15 years-old, and was sentenced to and successfully completed four years' probation.  At the time, Arizona did not have a sex offender registration statute.  *See State v. Henry*, 224 Ariz. 164, 168, 228 P.3d 900, 904 (App. 2010).  However, a year later, on July 27, 1983, Arizona enacted its modern sex offender registration statute, A.R.S. §

1   13-3821.  *State v. Noble*, 171 Ariz. 171, 172-73, 829 P.2d 1221, 1218-19 (1992).

2   Under the statute, Clark was classified as a Level Three Offender, meaning that the

3   statute applied to him to the greatest extent possible.  On December 21, 2009, Clark

4   was arrested for failing to register as required under the statute.  On January 13,

5   2010, pled guilty to the charge, a class 4 felony, and on February 12, 2010, was

6   sentenced to a stipulated term of 3.5 years' imprisonment.  Clark contends that by

7   requiring him to satisfy the registration requirements of A.R.S. § 13-3821, the State

8   of Arizona has violated the Ex Post Facto Clause of the United States Constitution,

9   article I, § 10, cl. 1.

10          In rejecting Clark's Ex Post Facto claim, the trial court and the Arizona Court

11  of Appeals relied on *State v. Henry*, 228 P.3d 900 (Ariz. App. 2010), which in turn

12  relied on the Supreme Court's decision in *Smith v. Doe*, 538 U.S. 84 (2003).  In

13  *Smith*, the Supreme Court reversed the Ninth Circuit's decision in *Doe v. Otte*, 259

14  F.3d 979 (9th Cir. 2001), and held that an Alaska statute requiring those convicted of

15  aggravated sex offenses to register every 90 days for life did not violate the Ex Post

16  Facto Clause.  538 U.S. at 99-105.  Clark argues that *Smith* is not controlling in this

17  case because, unlike the petitioners in *Smith*, Clark was imprisoned, placed on

18  probation and is seeking to have his conviction overturned.  Additionally, Clark

19  argues that the requirements of the Arizona statute render it much more punitive than

20  the Alaska statute addressed in *Smith*.  Specifically, he contends that the Arizona

21  statute's community notification provisions and sex offender registry website subject

22  registrants, particularly in the internet age, to a humiliating display of personal

6

1   information and status as a sex offender.  Clark's arguments fail for a number of

2   reasons.

3          Under AEDPA, the state court's denial of relief is unreasonable if it correctly

4   identifies the governing federal legal principle but applies it to a new set of facts in a

5   way that is objectively unreasonable, or if it extends or fails to extend a clearly

6   established legal principle to a new context in a way that is objectively unreasonable.

7   *Hernandez*, 282 F.3d 1132.  Because it is the last reasoned decision addressing

8   Clark's ex post facto claim, the Court must examine the trial court's order denying

9   the claim.  *Packer*, 277 F.3d at 1101 (habeas court must examine last reasoned

10  decision of a state court).  Clark does not argue that the trial court unreasonably

11  extended or failed to extend a clearly established legal principle to a new context.

12  Rather, he argues that the state court correctly identified the governing legal principle

13  as set out by the Supreme Court in *Smith*, but then applied it to the facts of his case in

14  a way that is objectively unreasonable.  The Court disagrees.

15         Unlike the petitioners in *Smith*, Clark was actually imprisoned and placed on

16  probation as a result of his violation of the Arizona registration requirements.  He

17  contends that his conviction and imprisonment makes his case "substantively

18  distinguishable from *Smith*."  *Petition*, p. 6.  He does not, however, cite any

19  authority, much less Supreme Court authority, that seizes on this distinction in

20  support of a finding that sex offender registration laws can violate the Ex Post Facto

21  Clause.  Even in the cases that involve petitioners who, like Clark, have been

22  prosecuted for violation of registration requirements, this factor does not impact the

1    court's analysis of the ex post facto implications of such statutes.  For example, in

2    *United States v. Elkins*, 683 F.3d 1029 (9th Cir. 2012), the Ninth Circuit applied *Smith*

3    to a defendant's claim that requiring him to register pursuant to the federal Sex

4    Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901 *et seq.*,

5    violated the Ex Post Facto Clause.  *Id*. at 1043-1049.  Despite the fact that the

6    defendant was not merely prospectively challenging the application of SORNA, but

7    was being prosecuted for failing to register, the court's discussion never raises that

8    distinction in rejecting the defendant's ex post facto claim.  *See id*.  Nor would it

9    make any sense if they had— the purpose of challenging the registration laws is not

10   only to avoid the registrations obligations, but also the penalties associated with

11   violating them.  This is true whether the petitioner in a particular case has violated

12   the provisions or not.

13         Clark next contends that Arizona registration requirements are decidedly more

14   burdensome than the Alaska statute examined in *Smith*.  *Petition*, pp. 6-10.  He first

15   notes that the extensive public access mandated through the community notifications

16   provisions, found in A.R.S. §§ 13-3285 and 3286, and the sex offender registry

17   website provision, found in A.R.S. § 3287, are not only a forced display of a scarlet

18   letter, but also "shine a spotlight on that letter."  *Petition*, p. 6.  These requirements,

19   along with ever-increasing public access to the internet, create the potential for

20   harassment and intimidation despite the website's warning that the information

21   should not be used for such purposes.  As Clark argues, internet access has

22   undoubtedly increased since the Supreme Court's decision in *Smith* in 2003.

1   However, he cites no authority that undermines the holding in *Smith* that the use of

2   the internet to disseminate truthful and otherwise publicly accessible information

3   does not constitute punishment.  *See Smith*, 538 U.S. at 97-99.  Moreover, the Ninth

4   Circuit has held that a state law which required government agencies to *actively*

5   notify the public of a sex offender's status was not so punitive as to violate the Ex

6   Post Facto Clause.  *Russell v. Gregoire*, 124 F.3d 1079, 1082 (9th Cir. 1997).  The

7   logic of that conclusion "remains sound in the wake of *Smith*," because even the

> 8   [a]ctive dissemination of an individual's sex offender status does not
> 9   alter the Court's core reasoning that "stigma . . . results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public."

10   *American Civil Liberties Union of Nevada v. Masto*, 670 F.3d 1046, 1056 (9th Cir.

11   2012) (quoting *Smith*, 538 U.S. at 98).  In light of *Smith* and its ensuing application

12   by the Ninth Circuit, this Court cannot conclude that the state court's rejection of

13   Clark's argument on this point was unreasonable.

14        Clark also contends that the Arizona statute's criminal penalties and $250

15   assessment render the statute punitive for purposes of ex post facto analysis.  The

16   former contention, that the criminal penalties constitute punishment, is dispelled by

17   *Smith*.  Like the Arizona statute, the Alaska statute found constitutional in that case

18   imposed criminal penalties, including felony penalties for certain violations.  *See*

19   *Smith*, 538 U.S. at 96; *see also* Alaska Stat. §§ 11.56.835 and 11.56.840 (describing

20   criminal penalties for violation of registration requirements).

21

22

1    As for the monetary assessment, the Court assumes Clark is referring to the

2    assessment imposed under A.R.S. § 13-3824 for failing to comply with the

3    registration requirements.   In support of his contention that such an assessment is

4    punitive, Clark cites *Doe v. Raemisch*, 895 F.Supp.2d 897 (E.D. Wis. 2012).   In that

5    case, the district court did conclude that the assessment at issue did violate the Ex

6    Post Facto Clause.   *Id*. at 909.   At the root of the decision, however, was the fact that

7    the assessment was annual and applied to offenders who had been discharged from

8    their sentences.   *Id*.   Thus, the Wisconsin assessment at issue in *Raemisch* is readily

9    distinguished from the one-time assessment imposed upon conviction under the

10   Arizona statute.   Moreover, on appeal, the Seventh Circuit reversed the district

11   court's conclusion, finding that the annual registration fee was not punitive.   *Mueller*

12   *v. Raemisch*, 740 F.3d 1128, 1133-34 (2014).

13   Clark next contends that lifetime in-person registration constitutes an

14   affirmative disability or restraint that renders the Arizona statute unconstitutional.

15   *Petition*, pp. 12-13.   In *Smith*, the Court found that Alaska's registration

16   requirements, requiring lifetime registration for more serious offenders, imposed no

17   physical restraint therefore imposed only a negligible disability.  538 U.S. at 89, 101.

18   The Court explained that any negative impact on a registrant's employment or

19   housing prospects resulted not from the registration requirements, but from the fact

20   of conviction.   *Id*. at 101.   Consistent with the Supreme Court's holding, the Ninth

21   Circuit has concluded that registration statutes like Arizona's which require lifetime,

22

10

1    in-person registration every 90 days did not impose any constitutionally significant

2    affirmative disability.  *Masto*, 670 F.3d at 1056.

3         Clark's last substantial argument is that the Arizona statute is rendered

4    unconstitutional because it imposes lifetime registration obligations on all offenders

5    and offers no mechanism to seek relief.  *Petition*, pp. 16-18.  To the extent this claim

6    alleges a procedural due process violation, it is foreclosed.  The Supreme Court has

7    concluded that, once an individual has been convicted of a sex offense, no further

8    process is required before imposing sex offender conditions.  *Conn. Dep't of Pub.*

9    *Safety v. Doe*, 538 U.S. 1, 7-8 (2003) (concluding that "the law's requirements turn

10   on an offender's conviction alone—a fact that a convicted offender has already had a

11   procedurally safeguarded opportunity to contest").

12        Also foreclosed is Clark's argument that the Arizona statue is excessive in

13   scope because it does not offer individualized review for those subject to its

14   requirements.  In *Smith*, the Supreme Court held that Alaska could make "reasonable

15   categorical judgments that conviction of specified crimes should entail particular

16   regulatory consequences."  538 U.S. at 103.  The Court explained that "[t]he State's

17   determination to legislate with respect to convicted sex offenders as a class, rather

18   than require individual determination of their dangerousness, does not make the

19   statute a punishment under the *Ex Post Facto* Clause."  *Id*. at 104; *see also Masto*,

20   670 F.3d at 1057 (finding Nevada's registration requirements were not excessive and

21   did not violate the Ex Post Facto Clause).

22

1      Despite the Supreme Court authority weighing heavily against him, Clark

2 offers *Wallace v. State*, 905 N.E.2d 371 (Ind. 2009), to bolster his argument.   In

3 *Wallace*, however, the Indiana Supreme Court expressly stated that it evaluating the

4 registration requirements under the Indiana Constitution's Ex Post Facto Clause and

5 that the inquiry required "an independent analysis . . . ."   *Id*. at 378.   That

6 independent analysis led the court to conclude that the Indiana statute, at least as

7 applied to Wallace, "violates the prohibition on ex post facto laws contained in the

8 Indiana Constitution . . . ."   *Id*. at 384.   The analysis being based on the Indiana

9 Constitution, it does not impact upon the United States Supreme Court's decision in

10 *Smith* and the Ninth Circuit's subsequent application of *Smith*.

11 **III.   RECOMMENDATION**

12      Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the

13 District Court, after its independent review, **deny** Clark's Amended Petition for Writ

14 of Habeas Corpus (Doc. 8).

15      This Recommendation is not an order that is immediately appealable to the

16 Ninth Circuit Court of Appeals.   Any notice of appeal pursuant to Rule 4(a)(1),

17 Federal Rules of Appellate Procedure, should not be filed until entry of the District

18 Court's judgment.

19      However, the parties shall have fourteen (14) days from the date of service of

20 a copy of this recommendation within which to file specific written objections with

21 the District Court.   *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the

22 Federal Rules of Civil Procedure.   Thereafter, the parties have fourteen (14) days

12

1    within which to file a response to the objections.  Replies shall not be filed without

2    first obtaining leave to do so from the District Court.  If any objections are filed, this

3    action should be designated case number: **CV 13-0129-TUC-JAS**.  Failure to timely

4    file objections to any factual or legal determination of the Magistrate Judge may be

5    considered a waiver of a party's right to *de novo* consideration of the issues.  *See*

6    *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003)(*en banc*).

7        Dated this 9th day of December, 2014.

8

9

Jacqueline M. Rateau
Jacqueline M. Rateau
United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22